540 F.2d 864
 13 Fair Empl.Prac.Cas. 499,
12 Empl. Prac. Dec. P 11,187
LOCAL 194, RETAIL, WHOLESALE AND DEPARTMENT STORE UNION,
Plaintiff-Appellant,
v.
STANDARD BRANDS, INC., a corporation, Defendant-Appellee.
 No. 75-2035.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 24, 1976.
Decided Aug. 24, 1976.
Rehearing Denied Sept. 22, 1976.
 
 Peter R. Meyers, Chicago, Ill., for plaintiff-appellant.
 Abner W. Sibal, Marian Halley, Equal Employment Opportunity Commission, Washington, D. C., for amicus curiae.
 Robert E. Haythorne, Chicago, Ill., for defendant-appellee.
 Before PELL, TONE and BAUER, Circuit Judges.
 TONE, Circuit Judge.
 
 
 1
 In this case we must decide whether a labor union can represent its members as a plaintiff in an action brought under Title VII of the Equal Employment Opportunity Act, 42 U.S.C. § 2000e-5, et seq., and the Civil Rights Act of 1866, 42 U.S.C. § 1981. The District Court dismissed the union as a party and, there being other plaintiffs who remain in the case, proceeded under the authority of Rule 54(b), Fed.R.Civ.P., to enter judgment against the union and determine that there was no just reason for delay. The union appealed. We reverse the judgment.
 
 
 2
 In 1969, the plaintiff union, Local 194 of the Retail, Wholesale and Department Store Union, filed a complaint against defendant Standard Brands, Inc., with the Equal Employment Opportunity Commission. Nearly four years later the EEOC found reasonable cause to believe that defendant was violating Title VII. Following unsuccessful attempts at conciliation, the EEOC issued a "Notice of Right to Sue" to the union, which, together with three individual plaintiffs, then filed this suit based on Title VII and 42 U.S.C. § 1981. Plaintiffs sue on behalf of themselves and as representatives of a class consisting of all blacks, Spanish-surnamed persons, and women against whom defendant has allegedly practiced discrimination in hiring and promotion. EEOC was allowed to intervene. The District Court granted defendant's motion to dismiss the union, and this appeal followed.
 
 
 3
 We believe the issues before us, to the extent that they were previously in doubt, have been resolved by Warth v. Seldin, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), which was handed down the same day the District Court entered the order appealed from in this case. In Warth the Court stated that an organization, even though it has suffered no injury itself,[1] has standing to represent any of its members, who "are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." Id. at 511, 95 S.Ct. at 2211, citing Sierra Club v. Morton, 405 U.S. 727, 734-741, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). That standing, however, is ordinarily only to invoke the court's injunctive or declaratory powers. An organization which has suffered "no monetary injury to itself, nor (received) any assignment of the damages claims of its members," cannot recover damages for individual members. When "damages claims are not common to the entire membership, nor shared by all in equal degree," but are "peculiar to the individual member concerned," each member who claims damages must be a party to the suit, and the organization lacks standing to claim damages on his behalf. Id. at 515-516, 95 S.Ct. at 2214.
 
 
 4
 Applying these principles here, we have no difficulty in finding standing in the union to represent its members who have allegedly suffered from discriminatory employment practices insofar as injunctive and declaratory relief is claimed. The union does not, however, have standing to seek, on behalf of the class, back pay or other individualized forms of monetary relief.
 
 
 5
 While Warth v. Seldin would control in any event, we note that views consistent with its holding on standing were expressed in Air Line Stewards & Stewardesses Association, Local 550 v. American Airlines, Inc., 490 F.2d 636 (7th Cir. 1973), cert. denied, 416 U.S. 993, 94 S.Ct. 2406, 40 L.Ed.2d 773 (1974), in which Judge Fairchild, citing and quoting from Bowe v. Colgate-Palmolive Co., 416 F.2d 711, 719 (7th Cir. 1969), stated:
 
 
 6
 "We think a union may serve its members by being plaintiff in a suit to vindicate their civil rights." 490 F.2d at 642.
 
 
 7
 There is no reason why the general rule on organizational standing should not be followed here. Congress has not restricted standing in cases like the one before us by imposing requirements more exacting than those stated in Warth v. Seldin. The reference in § 2000e-5 to the "person aggrieved" does not indicate a congressional intent to define standing narrowly for cases brought under Title VII. First, the Supreme Court has granted standing under the Administrative Procedure Act to organizations as persons "aggrieved or adversely affected" when the interests of their members have been injured. United States v. Students Challenging Regulatory Agency Procedures, 412 U.S. 669, 685, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973) (SCRAP I). In the context of the 1964 Civil Rights Act itself, the reference to "aggrieved persons" has been taken to indicate an intent to broaden standing rather than restrict it. Trafficante v. Metropolitan Life Insurance Co., 409 U.S. 205, 209, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972); Hackett v. McGuire Brothers, Inc., 445 F.2d 442, 446-447 (3d Cir. 1971). Second, granting standing to unions is consistent with the policies underlying Title VII. Private enforcement suits are an "essential means of obtaining judicial enforcement of Title VII" and of "vindicat(ing) the important congressional policy against discriminatory employment practices." Alexander v. Gardner-Denver Co., 415 U.S. 36, 45, 94 S.Ct. 1011, 1018, 39 L.Ed.2d 147 (1974). The effectiveness of these suits can be increased by allowing unions to place their financial resources and expertise behind the suit. See Comment, From Net to Sword: Organizational Representatives Litigating Their Members' Claims, 1974 U.Ill.L.F. 663, 670. We conclude that a union has standing as an "aggrieved person" under Title VII to represent members who are victims of discrimination. Accord, Air Line Pilots Association v. Continental Air Lines, 10 F.E.P. 462 (N.D.Ill.1974); Air Line Pilots Association v. Ozark Air Lines, 10 F.E.P. 463 (N.D.Ill.1975); Lynch v. Sperry Rand Corp., 62 F.R.D. 78, 84 n.6 (S.D.N.Y.1973); Local 186, International Pulp, Sulphite & Paper Mill Workers v. Minnesota Mining & Manufacturing Co., 304 F.Supp. 1284, 1293 (N.D.Ind.1969); International Chemical Workers Union v. Planters Manufacturing Co., 259 F.Supp. 365 (N.D.Miss.1966). No reason has been suggested why a more restrictive standard should be applied to the claim under 42 U.S.C. § 1981.
 
 
 8
 Defendant's argument that the union members have conflicting interests and the union therefore cannot represent any of them does not, we think, defeat the union's standing in a case such as this. We have recognized that "(t)here is nothing in the law which precluded the Union from recognizing the injustice done to a substantial minority of its members and from moving to correct it." Bowe v. Colgate-Palmolive Co., supra, 416 F.2d at 719. Often a union finds itself in the position of representing a membership whose interests conflict, not only in Title VII cases but in its collective bargaining role. This does not disqualify it from acting at all. Humphrey v. Moore, 375 U.S. 335, 349, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). The union's duty is to represent fairly the interests of all members without discrimination toward any. Vaca v. Sipes, 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). "Title VII, unlike the National Labor Relations Act and Railway Labor Act, does not create nor necessarily recognize powers of exclusive representation," as Air Line Stewards pointed out, 490 F.2d at 641, and individual union members may elect not to have the union represent them. The union has standing, however, to represent those employees who wish to be represented but do not elect to become parties to the action.
 
 
 9
 There remains the question whether, given the union's standing to represent those of its members who are allegedly discriminated against by reason of their race, ancestry, or sex, it must nevertheless meet the requirements of Rule 23, Fed.R.Civ.P., in order to represent those persons.[2] The answer to this question also is to be found in Warth v. Seldin, which supersedes earlier indications in this court's opinions that Rule 23 governs. See Air Line Stewards, supra, 490 F.2d at 642; Cook County College Teachers Union v. Byrd, 456 F.2d 882, 885 (7th Cir. 1972), cert. denied, 409 U.S. 848, 93 S.Ct. 56, 34 L.Ed.2d 90 (1972).[3] The Court noted in Warth that in previous cases associations had only been granted standing to seek prospective relief, adding a "cf." citation to Rule 23(b)(2). 422 U.S. at 515, 95 S.Ct. 2197.[4] The Court then proceeded with its statement, referred to above, that an association does not have standing to bring actions to recover damages for individualized injuries to its members: Because "both the fact and extent of injury would require individualized proof," "each member . . . who claims injury as a result of respondents' practices must be a party to the suit." Id. at 515-516, 95 S.Ct. at 2214. This analysis is significant for two reasons: First, if Rule 23 governed organizational representation suits, the Court could simply have said so (instead of citing the rule as merely analogous) and added that such suits must be based on 23(b)(1) or 23(b)(2) rather than 23(b)(3), or that the factors determining the appropriateness of a (b)(3) class action govern if damages are sought on behalf of class members. Second, the Court's remarks plainly imply that the organization's members are not parties to an organizational representation suit. Yet class members are parties to class actions. See, e. g., Zahn v. International Paper Co., 414 U.S. 291, 301, 94 S.Ct. 505, 512, 38 L.Ed.2d 511 (1973) (class members must satisfy jurisdictional amount, because "(e)ach plaintiff in a Rule 23(b)(3) class action must satisfy the jurisdictional amount . . . ."). We conclude from Warth that organizational representation suits need not be brought as class actions, and that the requirements of Rule 23 are applicable only by analogy and only to the extent they are consistent with Warth v. Seldin.
 
 
 10
 In the nature of things, an organization suing solely as a representative of one or more of its members would be unable to meet all the requirements of Rule 23, if those requirements were read literally. It is not a member of the class of persons whose rights are to be vindicated, and, inasmuch as it can even sue on behalf of a single member, Warth v. Seldin, 422 U.S. at 511, 95 S.Ct. 2197, the standard of numerosity, Rule 23(a)(1), is not apt. The same is true of the common-question and typicality standards, Rule 23(a)(2) and (3), when the organization represents a single member, and, if more are represented, these matters are best controlled by joinder rules. In short, although Rule 23 may provide a useful analogy in some cases in which an organization represents its members, it is not controlling. We therefore need not apply without qualification the body of law that has developed under the adequate-representation standard of Rule 23(a)(4).
 
 
 11
 In summary, the union may represent those of its members it seeks to represent in this action. The District Court should require that the union give notice of its representation to all its members. Any member claiming to be a victim of discrimination who chooses not to be represented by the union may make other arrangements.[5]
 
 
 12
 Reversed and remanded.
 
 
 
 [1]
 In view of Warth, we need not consider the union's argument that it has suffered injury because the defendant's continued discrimination places the union under a burdensome duty to seek relief through collective bargaining and grievance procedures, or the argument that discriminatory hiring practices injure the union by denying it the intangible benefits of an integrated membership
 
 
 [2]
 The union does not mention Rule 23 in its brief, nor did the District Court in its memorandum of decision explaining its reasons for concluding that the union lacked Article III standing. While we could have decided only the standing issue and remanded to the District Court for the initial determination of whether Rule 23 applies, the issues of standing and its consequences and of the applicability of that rule are closely related and are in our view both controlled by Warth v. Seldin. We therefore believe we are justified in reaching the Rule 23 issue in the interest of efficient adjudication of this case
 
 
 [3]
 What is said in these cases should be read in light of the fact that the plaintiffs in each case expressly relied on Rule 23 and purported to sue on behalf of a class under the authority of that rule
 
 
 [4]
 It is perhaps unnecessary to explain that the signal "cf." means that the "(c)ited authority supports a statement, opinion, or conclusion of law different from that in text but sufficiently analogous to lend some support to the text." A Uniform System of Citation 87 (11th ed. 1967)
 
 
 [5]
 A member not wishing to be represented may appear on his own behalf, either by an attorney or pro se, or he may simply notify the clerk that he does not wish to be included in the litigation